Good afternoon. I'm Patrick Howe. I'm here for the appellant United Financial Casualty Company. The statute that the court's called upon to interpret is California Vehicle Code Section 30. As you can tell from the briefs, it governs the financial responsibility requirements of motor carriers of property. In other words, commercial truckers. I think, I think Sancho Oh, I'm sorry. I'm sorry. Okay. There are no disputed facts. Everything was submitted on stipulations below. It's a pure legal issue of statutory interpretation. And the issue is, under the vehicle code statute at issue, does it govern the cancellation of the truckers certificate of insurance, which is the financial responsibility requirement, or does it govern the certificate and the actual insurance contract? If it's just the former, as I think the statute compels, and as we argue, then the district court's judgment should be reversed and summary judgment should be entered for my client. Well, but there's a certification issue. And I'm a California girl from the California courts. And but I've been in the federal courts for a long time. And you don't say that we don't need to certify it to the California Supreme Court. But and you're also arguing that cases cited by the other side are not applicable. But we have to if we decide this on the merits, of course, you would want us to reverse it. And we don't have a lot to go on. It certainly seems like it's a very, the arguments, there's a lot that are very policy based. And I, I would think the California Supreme Court would want to weigh in on this. So are you worried you're going to lose with the California Supreme Court, you'd rather take your chances with the Ninth Circuit? Of course not, Your Honor. But I think the statute, especially under the statutory interpretation rules that California gives us in which this court would follow are pretty straightforward. And by looking at the statute itself, as to how it uses both terms, insurance policy, and certificate of insurance throughout the Motor Carrier Property Permit Act. And then in the specific statute that we're discussing the cancellation provisions refer only to the certificate of insurance. Those are basic statutory interpretation. Okay, but let's look at it. Let's say our job in this case is to decide it as the California Supreme Court would decide it. And in California, they look to the statute purpose and policy if it's ambiguous. So isn't the purpose of a certificate of insurance to provide proof of an underlying policy? And if the statute says the only way to cancel the certificate is to do so according to the rules of the statute, isn't the then still in effect if the certificate is not canceled? No, Your Honor, it isn't. And it's provided for right on the face of the statute in plain language. If we look at subdivision B of vehicle code section 34630, which the whole text is at page two of the addendum, the cancellation provision says the certificate of insurance shall not be cancelable on less than 30 days written notice from the insurer to the DMV. And if you read that in connection with the prior subdivision, subdivision A, that talks about the purpose of this certificate in the first place, you come away with two purposes of the statute. The first is why is this certificate required? Subdivision A tells us it shall provide coverage with respect to the operation, maintenance, or use of any vehicle for which a permit is required, although the vehicle may not be specifically described in the policy. So you can have situations where the insurance policies enforce the trucker for whatever reason. Maybe they borrow somebody else's vehicle. Maybe they're operating their own vehicle, but they don't tell their insurance company because they don't want to pay premiums on that truck. If they use that truck... Mr. Howe. Mr. Howe, actually, you can take a break. We've lost Judge O'Scanlan. So if we could stop the clock. There we go. Judges, I'm working on getting Judge O'Scanlan back right now. All right. So we'll get back on the clock. And I think where we left off... Go ahead, Mr. Howe. Sure. Where we left off, I was explaining that the statute in subdivisions A and subdivision B tell us on the face of the statute what the purpose is and why only cancellation of the certificate of insurance needs to be considered. And in subdivision A explains the purpose of the certificate. Again, if the trucker is using a commercial vehicle in his or her business that is not covered by the insurance policy, the legislature has determined that they want to have a certificate of insurance that covers the injury to the accident victim under this certificate for that unscheduled vehicle. And then if you go to... Mr. Howe, this is Judge O'Scanlan. What are we to do with the Transamerica case? Your Honor, the Transamerica case was decided under the predecessor statute, the Highway Carriers Act. That was the PUC Code 3634. And I think that we should do nothing with it. And that is because when the Motor Carrier of Property Permit Act was enacted in 1996, one of the things that was done was the PUC statute was repealed. And then the language we're talking about here, whether the 30-day period of cancellation applies to the insurance policy or only to the certificate of insurance, the legislative history, and I've given you the links at pages 22 and 24 of the appellant's brief, they tell us exactly what happened. The legislature in the August 1995 draft first considered to have the cancellation provisions apply only to the policy as it was in the predecessor statute. But then 10 months later in the June version of the legislation, they removed that entirely and inserted the current cancellation provision that applies only to the certificate of insurance. So that tells us without a doubt that the legislature decided to change course and apply the cancellation provisions only to the certificate of insurance. And then the question may be, well, what governs the policy? That's what Insurance Code Section 677.2 does, as we pointed out in our brief. That's an entirely different statute. It governs what steps need to be taken for cancellation of actual insurance contract, and none of those steps require notice to the Department of Motor Vehicles. Council, I have one further question. This all has to do with the November 5, 2013 notice of cancellation that your company sent, but I gather the DMV felt it was never filed properly. Do I have that understanding? I think so, Your Honor. I'm not sure about the date, but you had essentially timeline Mr. Porras's policy with my client lapsed. It wasn't canceled. He just decided for whatever reason to purchase his insurance through Ally. No, that's 2015. I'm misreading the record. Ally relies on the fact that that notice of cancellation was never effective, and therefore, your company is liable. There were various notices of cancellation sent to the DMV, depending on whether Mr. Porras changed his policy limits, but I can tell you that the notice of cancellation that went out by my client after the lapse of the policy was not accepted by the DMV because of a clerical error, and then the accident happened three or four months later, or five months later, and at that time, the Ally policy was in force, and my client's policy was not, but its certificate was still on file with the DMV. I need to ask you, I like to understand things from a practical standpoint. Here, I think you both noticed, we know that we have two insurance companies, and this case settled, I think, for the policy limits on that. I think $750,000 or $1,000,000. It was $1,000,000 at the time. Let's just say we say that you lose. I'm saying this hypothetically, so don't jump out of your chair right now. We say that you lose. I know it was a fatal, and $1,000,000 isn't that much for a fatal, and it's looks like whoever, the family of the victim or whoever got the money settled that Ally just paid out the policy limits. If your interpretation is wrong, and we say that that put you on the line, would the victim then have had $2,000,000 available? No, because they already signed a release and settled the case. It's done. No, but let's just say if the law, if we say the law is, or the California Supreme Court says, as long as you've got that certificate on file, regardless of what happened to the policy, you have to pay the policy limits. If that were the law, then it would seem to me at the time that the victim would have sued, you'd both be on the line for $1,000,000, right? Well, if the insurance policy, my client's insurance policy is still in force, and Ally's policy is also in force, I'm not sure how that would happen in this circumstance. But here the court said, Ally's suing you to pay half of that. They're saying you've got to pay half, $500,000 of the $1,000,000 they settled for. But it seems to me that if what the policy is, if you haven't canceled the certificate of insurance properly with DMV, the policy is still considered in effect that there would have been $2,000,000 on the line. Am I understanding that wrong? Well, I would imagine, again, we're saying the policy wasn't in force. But if California said the law was like what this district judge did, or what is being argued here, would that result in that the victim's family of this fatal or whatever would have $2,000,000 available? Well, I guess it would be how creative the claimant's lawyers are. But my view would be that only, again, the certificate of insurance is in place, and there hasn't been any case law in California that it's addressed it. But the federal cases I've cited in my brief and other cases outside have said that if the insurance policy that's actually in force provides at least the financial responsibility limits here, $750,000, that we shouldn't be stacking certificates of insurance on top of that coverage. But there hasn't been a California case yet that has addressed that issue. So, I mean, I guess what I'm trying to say is if you lose here, or if you lose with the California Supreme Court, if you lose and you have to pay $500,000 to United, does that, and under the theory of the cases that's argued here, would that mean that victims would be able to make the same, they would have access to two policies in that situation? I'm trying to understand that. Yes, I think it would give rise to an argument that they could make, yes. I just always like to understand things that way, in your world, what it means in your world. It looks like I've got a minute and 45, I'll think I'll reserve that. Okay, we'll give you two minutes since we took some of your time. All right, we'll hear from the appellee then. I'm sorry, I called you Ms. Arrow because I'm looking at Arrow here and I know it says Booth on the calendar, so I'm sorry. Oh, no problem, Your Honor. I appreciate that. It does cause confusion. So to start fresh, good afternoon, may it please the court. My name is Hillary Arrow Booth and I represent Allied Premier Insurance in this matter. As I believe you can see from the briefs and the oral argument presented here today by appellant, what appellant is really asking you to do is twist the meaning of a certificate of insurance, twist the relevant statutes and all of the applicable precedent, which granted is not very much, beyond recognition. And the whole point of this is to save the appellant from its own mistake. Counsel, may I ask which notice of cancellation are you relying upon? In other words, the United notice for your position? Well, Your Honor, for our position, we are relying on the fact that no proper notice of cancellation was timely received by the DMV. Is that starting back in November of 2013 with the effective date of cancellation of December 10, 2013? Or is it the February 6, 2015 effective April 12, 2015? Which one? The latter one. I believe it was the April 2015. And Your Honor, the earlier... And what is the defect in the latter one? Well, the defect was, as the DMV had pointed out, there was an inconsistency in either the policy numbers or dates. But the import for this case is not necessarily what the specific defect was. The import is that the DMV rejected the notice of cancellation and sent it back to appellant. The burden was then back on appellant to correct whatever the mistake was and send a proper notice of cancellation back to the DMV. Did they get that, though, before the accident happened, the rejection? Your Honor, I don't believe that is in the record. However, we would submit that it is irrelevant because of the way the code sections are written. The DMV must actually receive it, and that is defined as receiving a proper notice. I know these statutes sound like they're harsh, but they are. Insurance companies are held to a very high standard in this regard, and if they make any mistake at all, it's on them. It just has to be perfect. Well, counsel, I... Oh, sorry. Excuse me. Go ahead, Judge O'Scanlan. Go ahead. We can't see each other. Go ahead. I know. I'm very sorry. What strikes me, counsel, is that this is a windfall for your company. If the notice in 2015 was defective, you didn't file suit until December 12, 2017. When did you find out that the notice was defective? Well, Your Honor, Allied Premier was aware prior to the time the underlying case was settled of the existence of the appellant's policy and the continued effectiveness of appellant's policy. During the underlying case, and I believe it's in the record. I don't have the site for you right now, but it is in our brief with the site. Allied had tendered to United Financial and had requested, in fact, demanded that they participate in the underlying case and provide a defense as the policy is a primary policy. So, you have a situation where you have two primary policies and Allied demanded the participation of appellant, appellant refused, and after Allied settled the underlying case for its policy limits, began pursuing appellant in this action. Well, and then if you were aware of that at that time, you were obviously aware of the terms of the policy that United had, were you not? I cannot say for sure whether we have the that that policy lapsed in 2015 and was over. The coverage was terminated. I gather, if I'm not mistaken, the correct date of termination is April 12, 2015, which I believe is the day before your policy picked up and you took coverage from that. That is incorrect, your honor. Okay. And the reason why is because on the DMV website that is available to the public for search, it showed at the time of the accident that the appellant's policy was still listed. Appellant was listed as was yours, I assume. Correct, your honor. And appellant's policy or appellant's financial responsibility and policy obligations were listed on the DMV site. There is no policy that can be reviewed and the information is simply from the DMV stating to the public that this policy is in existence and remains in full force and effect because it had not been canceled. So, do some people have more than two certificates of insurance listed or do they only put one? What's the... Your honor, I obviously can't speak for everybody. My understanding is that most motor carriers have one at a time. They may have excess coverage, but it's generally only the primary coverage that's listed. In my experience in representing trucking companies, this situation that United finds itself in is not as rare as you might think. Okay, I was wondering about that because on the certification issue, if we were to decide or if the California Supreme Court were to decide consistent with what the district court said, would the victim's family or whoever the fatal had to do, you paid the what the district court said, would the victim have had access to $2 million? I believe that both policies would have been considered primary policies and so my understanding is that that could have been available. I don't know all of the defenses that appellant may have had in that situation, but I do know that the law considers them both primary policies. Okay, so I mean in terms of that, obviously we... So the fact that you're both insurance companies here, if we certify this case, it'll take a while. And so I know that there's always some delay on certification. Honestly, I'm not quite as concerned on is a small amount of money. It certainly is not, but I'm assuming that the delay, if we wanted to make sure that we rather than channel what California would do, we decided we want to hear what they would do. What's your argument on certification? Well, of course, I mean, argument that it should or should not be requested. Yeah. If you're going to win right now, of course you want, everyone wants to win right now. And so does Mr. Howe. And so everyone would like to, he would like to reverse, you'd like us to affirm. But in terms of, you said this does come up a bit, this isn't as unusual as what, it's not a one-off? Well, your honor, I can tell you from my personal experience in practicing law, I've seen two or three in the past 10 years, not a lot. We have had occasion to search DMV records and every, yeah, it, I don't know how to characterize it. I wouldn't say rare, I wouldn't say common, but we do find these situations. Um, but I think the certification we raised in our brief, because we did feel, um, that, that there is a lack of, you know, precedent in the case law, but I would like to point out a couple of things with respect to appellant's argument that I think are important that are being looked at. We have three documents. We have a certificate of insurance, we have an endorsement, and we have a policy. Plaintiff is asking you to see these documents as three completely separate standalone documents. As we discuss in our brief, you can't separate them. You simply cannot kill the policy and claim that the certificate of insurance is still alive. And one of the main reasons for that is if you look at the certificate of insurance itself, which is in the record at page 91, the, the, one of the lines here, and this is under oath statement by appellant, says the motor carrier of property insured identified herein is covered by an insurance policy. The only purpose of the certificate of insurance is to evidence that there is in fact a policy in place. A certificate of insurance can't live by itself. It is, it's just informing the DMV that a policy exists. That's the record of the policy. And if we look, your honor, at the endorsement, the endorsement is what enlarges coverage under the policy, but is, again, by its expressed terms in the endorsements at 92 in the record, it says that the endorsement quote, shall be attached to and made a part of all policies ensuring motor carriers of property. You cannot separate this endorsement from the policy the same as you cannot endorse, you cannot separate any endorsement from any insurance policy. Endorsements don't stand alone. They are not complete documents. So, the endorsement and the policy are one in the same. The certificate evidences the existence of the policy. What appellant was arguing here was the purpose of the certificate is to expand coverage to cover unscheduled vehicles. That is not the purpose of the certificate of insurance. In fact, that is precisely the purpose of the endorsement, which is part of the policy. And I see my time is tight. I just want to skip real quick to the primary vehicle code section that appellant is relying on, which is vehicle code section 34630. Appellant is relying solely on section B, which does say the words, the certificate of insurance shall not be cancelable. It does say certificate of insurance, but if you look at section A, which obviously comes before B, in section A of the statute, the language says a motor carrier permit shall not be granted to any motor carrier property until there is filed with the department proof of financial responsibility in the form of a currently effective certificate of insurance. And you skip down a section A and it says, if the policy represented by the certificate meets the minimum insurance requirement. The statutory language in the section before section B is already recognizing that all a certificate does is represent an insurance policy. In this scheme of regulations and statute, the certificate of insurance is filed with the DMV. The policy is not. But the certificate cannot be cancelable except on 30 days notice. The certificate is the only thing the DMV has. But if the certificate is not canceled, the policy must still be alive because the certificate can't be alive without the policy also being alive and the certificate states under perjury that the policy exists. You can't separate them. I think we understand your argument. Let me ask my colleagues since you're a minute over, let me ask them if they have any additional questions. I'm good. Thank you. No, thank you. All right. So wrap up in 30 seconds. Thank you, your honor. I appreciate the opportunity and that's all I have. All right. Thank you. All right. Mr. Howe, you have, I think I gave you what, two minutes. Did I give you two minutes? Yeah, you have two minutes for rebuttal. You're still muted. Unmute. There we go. Okay. Addressing a few of the points by opposing counsel, she refers to the various DMV forms. I wish the DMV forms that the executive branch use some better drafting quality because they're certainly at certain points at odds with the enabling statute, which controls. But I think the court in interpreting them needs to find a way to an insurance company files a certificate of insurance that says there is a policy in force. It has to be recognized that that certificate is filed when the policy is in force, but at a subsequent date, the policy may lapse because the policy holder decides not to keep it in force. And so at that point, the policy is not in force, even though the prior certificate says it is. So I think those are just drafting errors or things that can be construed to be consistent with the statute. The court, what if he didn't have, what if that your certificate of insurance was the only one there? Let's say the other one wasn't hypothetically, but the policy had lapsed. Then we'd be on the hook. If the other insurance company wasn't there, but which brings it to why is the analysis different on that? Well, because your honor, the purpose of the statute is reflected is to protect the third party claimant. And that's happened here. So if if they couldn't have two million bucks, I think a fatal usually one million bucks isn't that much. Well, I don't know what the allied told the claimant about available insurance, so I'm not sure what took place there. But what I can tell you is if I could just get a couple seconds to wrap it up right now, if if if the judgment is affirmed, you basically have a holding that this statute applies to the cancellation of the insurance policy. So. Let's assume my client did the right thing. The policy lapses. We send out the notice of cancellation to the DMV. It's accepted. There's 30 days of what called free coverage for the claimant in the event the motor carrier doesn't go get new insurance coverage. If the judgment's affirmed, then it's holding is not only going to apply to our situation. It'll apply even if my client did the right thing because Allied's policy goes into effect day one. And if the loss happens during those first 30 days, now Allied can pay the claim and then come back to my client for half. And that's not what the statute was intended to be. And otherwise, your honor, if you unless you unless the I mean, you find out if my colleagues judges Scanlon, did you have any other questions of Mr. Howe? No, thank you. Judge Owens. I'm good. Okay, apparently we're questioned out. So thank you both. You both did an excellent job with your arguments and it's helpful. And this matter will stand submitted. Thank you. Thank you. All right. I believe that I called the last case already. So I think we finished going through the calendar. So this court will be in recess till tomorrow at one o'clock, and the judges will be moved to the roving room.
judges: O'scannlain, Callahan, Owens